Our fifth case for this morning is Streit v. Metropolitan Casualty Insurance. Mr. Finn. Good morning, Harris. May it please the Court. Good morning. Again, my name is Thomas Finn on behalf of Metropolitan Property Casualty. It's our position that the District Court's judgment avoiding the insurance policy's express intentional act exclusion must be reversed because it is contrary to existing law that has held that such exclusions are clear, unambiguous, valid, and enforceable. Excuse me. An important threshold question, I think, in this case is whether the Illinois standard fire insurance policy is binding. I think you're taking the position that it is not. But how, then, would you explain cases like FBS Mortgage and Lundquist that say standard fire insurance form policy is, indeed, and, in fact, binding? Section 2301.30 of the Insurance Code specifies that any policy must conform to the Illinois standard fire policy. So what does that mean if not that a policy must provide at least as much coverage to the insured as the standard policy? Because that's where I'm having a problem. I think the standard fire policy, when you say it's binding, is part of the policy. The statute does say it's adopted. I think the distinction is that Illinois has not expressly adopted that statute. I think 397 basically says that the director of insurance can promulgate additional coverages for concurrence of contract when two or more insurers insure the same risk. There is no legislation that states all fire policies must incorporate the terms and provisions no less favorable to the insured in the standard fire policy. I agree. 2301.100 of the Illinois Administrative Code, it provides that all policies must conform to the standard fire policy. But the legislature has not specifically adopted that statute. So I think you go back to- But your opponents cite to quite a few other parts of the code where the things adopted through the administrative process have the force and effect of law. And this certainly has been. And I guess it's your view that despite this list, A through J, in the standard fire policy, you're free to add as many other exclusions from liability as you want. And it doesn't seem to make any sense if that's your position. Well, I think section 442 of the Illinois Insurance Code does state that the obligations of an insurer shall not be less favorable to the insured than is required by the provisions of the code. Well, and less favorable must mean that there's another exclusion, right? You know, people buy insurance because they think there isn't an exclusion. So if you've excluded, you know, a particular type of risk, then it's to that degree a less valuable policy. But I think what you have to focus on, Your Honor, is that the code, there's no provisions in the code containing the standard fire policy's list of permissible exclusions. So because the code provisions do not contain a list- And it has the force of statute, as the district court observed and as your opponents have argued. And so you need to explain what are the limits. You know, if this is just so much hot air, you know, that there's this list of things that you don't have to cover, but you can actually make that list three times as long as you want. You can have an A to Z if you want. You know, what makes that standard? You know, it means it's going to be different for every policy in the state, and you don't have the congruence of policies. Well, I think the distinction is that you have to look at the standard fire policy, and then you have to look at the legislature enactment of 15522B. Right, and we've looked at that, and your opponents suggest that 15522B represents a particular situation where there's special treatment for victims of criminal domestic violence under the circumstances there. But it doesn't necessarily say that you couldn't have an innocent co-insured exception elsewhere. Well, I think the statute specifically addresses the innocent co-insured and the insurance industry's intentional act exclusion. And the point is that the district court never even addressed the statute in holding the public policy mandates voiding the policy's intentional act exclusion. What the courts order, the ruling states that because the standard fire policy does not exclude coverage for intentional acts, including arson, all fires caused by an insured's intentional conduct must be covered if other conditions are met. They're saying that limiting it to non-fire laws, this is why 15522B isn't superfluous. Let me ask you a slightly different question. Your opponents indicate, I mean, these forms are actually quite similar around the country. Quite a few states adopt the same form. They say that you're swimming upstream, that most other states have not, in fact, adopted the very restrictive view that you have of this identical policy language. Well, I would say that those decisions from other states haven't addressed the argument or the context of the standard fire policy in congruence with 15522B. Because that statute... But of course, as you pointed out, 15522B deals with all kinds of risks. It's not just a fire specific. So it might extend protection for an innocent co-insured in different kinds of situations, not involving the risk of fire. It's earthquakes or it's hurricanes or it's something else. Well, I think the focus should be is what is Illinois public policy? Because there are no cases that have addressed... What does Illinois want to say? Certainly, obviously, you have to have an exclusion for the tortfeasor because, obviously, you'd have a moral hazard problem if the intentional tortfeasor could get coverage. But the public policy question isn't that. It's why not have the possibility of the innocent co-insured showing that they had nothing to do with it, like these poor people who not only lost their home but also have this issue with their son. Right. Well, I think the legislature, by enacting that statute, has addressed and has dictated what the public policy is. They have said when you have a policy that includes intentional act exclusions, there is a limited carve-out of when an innocent co-insured collects. And that... Right. That statute applies across property and casualty insurance. We're talking about the specific context of fire insurance and the standard fire insurance policy, which has the force of law by virtue of the statutory grant to the commissioner of insurance to promulgate regulations and the fact that the commissioner has promulgated regulations. So this policy, the standard policy, does have the force of law, as Illinois courts have recognized. And there is a provision that says that coverage is suspended or restricted while the hazard is increased by any means within the control or knowledge of the insured. The insured, not an insured. Correct. And that addresses the moral hazard problem that Chief Judge Wood just raised and brings the standard policy within the normal public policy considerations that prevail in insurance law contexts. So that, I mean, you can limit your policy to the extent that you limit coverage or suspend coverage in favor of an insured whose own intentional conduct increases the hazard, which means that if the couple themselves had set the fire, they couldn't recover. That's the moral hazard problem that you could have put into your policy but didn't. Unfortunately, that's not what the court's order reads, though. The court's order. No, the order below is clearly over broad, over reading the cases. But this is bringing it within the normal confines of insurance law. And your intentional conduct exclusion is too broad to fit within what Illinois laws requires or permits in the context of a standard fire insurance policy. You have to rewrite your policy to include this innocent insured language. Well, I would submit that the Illinois public policy is expressed by this statute that was enacted well after the standard fire policy. It can't be read in a vacuum. It has to be read in light of the grant of authority, the statutory grant of authority to the Commissioner of Insurance. Maybe you don't call it a commissioner here. Maybe it's director. But the head of the insurance, yeah, the director of insurance shall promulgate regulations to promote uniformity of policies. And the director has done so and says there shall be a standard fire insurance policy, and here it is. And it does have this narrower permissible exclusion for intentional increase of the hazard. There is no exclusion for arson. There is no exclusion for intentional acts in the standard fire policy. And I would submit that if the legislature would not have enacted this statute in 1998, if it was intent that the standard fire policy An act of arson increases the hazard, does it not? I'm sorry? An act of arson increases the hazard. Absolutely. So it would fall within this language that I just read to you. An act of arson suspends coverage. So that if the insured who is trying to collect actually commits the arson, they can't collect. Coverage is suspended as to him or her. But if a co-insured commits the arson, the innocent insured can collect. That's the necessary implication of this language. I understand. And I understand the court's position. I would simply say that when you look at this statute, which wasn't addressed by the court, and I don't think it's addressed in these other jurisdictions, how do you balance what the legislature has said in this statute that talks specifically about when an innocent co-insured collects? They had to have looked at and understood what the interplay between policy That's it by saying it's extra protection for domestic violence victims. Certainly it is. But they looked at the intentional act exclusion, and what they've said is, this is where an innocent co-insured is allowed to recover. They said you have to have it. Why strew that as a legislative judgment that this is the only instance in which an insurer may not deny coverage to an innocent co-insured? It just shows that the legislature particularly wanted to protect the innocent co-insured in this one particular instance. But how does it show that the legislature considered and rejected other factual scenarios, including the very one that we have here? It just does not, to my view. Well, the statute says that if a policy excludes intentional loss, that exclusion will not apply when you have this limited circumstances of an innocent co-insured. Right, and that's the broad property and casualty setting that Judge Sykes was referring to, where we have the more specific standard fire policy. And as Judge Rovner says, in the broad setting, the legislature obviously wanted to take care of the domestic violence victims. And in doing so, they looked at, all right, you have policies that have intentional loss exclusions. So it's like the husband is throwing all the china at the wife, and maybe it's very valuable china. There's a loss, there's a property loss for there. She didn't do it. She's the victim, and so this statute allows her to recover. If there is, they looked at it, and it's a two-step process. There has to be a pattern of criminal domestic violence, and the perpetrator has to be prosecuted. Yeah, okay, so he gets prosecuted. That's fine. Anyway, if you'd like to save your last minute. I would. Okay, I will allow you to do that. That's fine. Thank you. Mr. Eshoo, good afternoon. Please report. For the record, at Eshoo, on behalf of Barbara and Wesley Street, respectfully we request that the district court's judgment be affirmed. Now, this is de novo review, I assume. It is. These are partial summary judgments and entries on a stipulated record. It is. Yeah. Absolutely, Your Honor. So we don't need to worry about any reasoning or any language that strikes us as too broad in the district court opinion? Not at all, Your Honor. In fact, what I actually tried to do in my brief was kind of narrow it a little bit also, which is why I went into kind of the history of how the other states have addressed it because the decision below it did not, and I thought that was a very important fact, is that, you know, you used the term swimming upstream, but the clear overall majority view in this country based on those 11 states and those 11 cases is to allow innocent co-insured recovery in all circumstances, no particular situation that you limit it to as what they're arguing in their exclusion as well as in 155.22b. Right. And there are cases in which that would certainly be a factual question, but for you the stipulation has taken their status as innocent co-insureds off the table. Absolutely, Your Honor. Yeah. Absolutely. And I think the one comment that I just will make is that in terms of what the legislature was thinking, I think Your Honors are correct that it's a stretch to assume that they made all these assumptions in terms of what they did. I think it's real simple. When you look at the standard fire policy, it falls within Article 23, labeled Fire and Marine Insurance under the Illinois Insurance Code, and 155.22b falls in Article 9. So clearly if they intended it to be an amendment or a modification or a change to standard fire policy, one would expect it to fall within the same provision that the standard fire policy is. In fact, if you look at section 397.01, they have a specific amendment to the standard fire policy for the appraisal clause, where the insurer, if they request an appraisal, can get their appraiser's fees and the umpire's fees recovered under certain circumstances. And it starts out with the title standard fire policy semicolon appraisal. So I think the legislative intent is the best evidence is where they put it in terms of different provisions of the code. If they intended it to be an amendment, it would have fallen within Article 23. Real simple. Other than that, Your Honor, I think the briefs support our position very clearly. If there are no questions, I stand on our brief. Judge Roker, any further questions? No, but thank you for asking. Thank you. So, Mr. Finn, we'll hear your last thought. Briefly, Your Honor, we cite Justice Tinder's decision, the RUMAX Beverly Can Company Bolger decision. And in that case, the court talked about that in Illinois, the primary objective in statutory interpretation is to give effect to the intent of the legislature. Because the most reliable indicator of the legislature's intent is the language of the statute, the Illinois Supreme Court looks there first in applying the plain, ordinary, and popularly understood meaning of the statute. I might add that I don't think that's a unique philosophy to Illinois, but we understand that. Thank you. So, again, when you look at the language of this statute that addressed a specific carve-out of the intentional act exclusion, the legislature must have intended that they're talking about intentional acts, they're talking about intentional act exclusions in the policy, and this and only this situation is when the innocent co-insured collects. So we respectfully ask that the court reverse the court's judgment and enter judgment in our favor. Thank you. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.